**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

EDDIE DUNNING,

       Plaintiff,                           CASE NO.  0:11-cv-62080-WPD

v.

PORTFOLIO RECOVERY ASSOCIATES, LLC,

       Defendant.
_____/

## PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

       NOW COMES Plaintiff, EDDIE DUNNING, ("Plaintiff"), and hereby submits this Memorandum in Opposition to the Motion for Summary Judgment of Defendant, PORTFOLIO RECOVERY ASSOCIATES, LLC ("Defendant").

       In accordance with Local Rule 56.1, Plaintiff has filed a Statement of Material Facts in Opposition to Defendant's Motion for Summary Judgment, which will be referenced throughout this Memorandum.  In light of these facts, several genuine issues of material of fact exist. Defendant is therefore not entitled to summary judgment as a matter of law.

**I.**       **STATEMENT OF FACTS**

       Although Plaintiff has submitted his Statement of Facts in a separate document in accordance with Local Rule 56.1, Plaintiff nonetheless submits the following brief summary of the case in issue. This case arises out of Defendant's conduct in its attempt to collect an alleged consumer debt from Plaintiff.  It is undisputed that Defendant placed between fifty to one hundred collection phone calls to Plaintiff in 2011, and not more than twenty phone calls in 2012.  Plaintiff's Statement of Material Facts (hereinafter "PSOMF") ¶ 1, Defendant's Statement of Material Facts (hereinafter "DSOMF") ¶ 1.  Plaintiff personally maintained notes of

1

Defendant's calls.  PSOMF ¶ 9, 11.  Plaintiff spoke to Defendant's representatives ten times, and repeatedly asked them to cease communication.  PSOMF ¶ 36.  After requesting that Defendant cease communication, Defendant placed more than eighteen harassing phone calls to Plaintiff.  PSOMF ¶ 37.  During a phone conversation, Defendant's representative verbally harassed Plaintiff.  PSOMF ¶ 38. Plaintiff suffered an aggravation of his high blood pressure due to Defendant's continued harassment.  PSOMF ¶ 39.

It is undisputed by both parties that on Sunday, August 11 at 4:00 P.M. Eastern Time, counsel for Plaintiff sent an e-mail containing a pre-litigation draft Complaint to Defendant's Legal Department, thereby providing written notice that Plaintiff was represented by counsel.  PSOMF ¶ 23; DSOMF ¶ 23.  It is also undisputed by both parties that subsequent to receiving this notification, Defendant placed a collection call to Plaintiff on Monday, August 12 at 8:24 A.M.  PSOMF ¶ 25; DSOMF ¶ 25.

## II.  STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide for summary judgment when the evidence available shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine dispute of material fact exists, the court construes all facts in the light most favorable to the nonmoving party and draws all reasonable and justifiable inferences in that party's favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Rakes v. Life Investors Ins. Co. of America*, 582 F.3d 886, 893 (8th Cir. 2009).  Summary judgment is not proper if material factual issues exist.  *Davenport v. Univ. of Ark. Bd. of Trustees*, 553 F.3d 1110, 1112–13 (8th Cir.2009).  The moving party bears the burden of proving the absence of any triable issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  The non-moving party defeats a motion

for summary judgment by producing evidence "such that a reasonable jury could return a verdict" in his favor. *Anderson*, 477 U.S. at 248; *Davenport*, 553 F.3d at 1112–13.

## III.   THE ELEVENTH CIRCUIT FOLLOWS THE LEAST SOPHISTICATED CONSUMER STANDARD AND STRICT LIABILITY

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  In determining whether debt collectors are liable under the FDCPA, the Eleventh Circuit ruled that violations should be evaluated under the "least sophisticated consumer" standard. *Jeter v. Credit Bureau, Inc.*, 760 F. 2d. 1168, 1174 (11th Cir. 1985).  The Eleventh Circuit stated that this standard best serves "[t]he FDCPA's purpose of protecting [consumers]." *Jeter*, 760 F. 2d at 1175 (citing *Wright v. Credit Bureau of Georgia*, 548 F. Supp. 591, 599 (N.D. Ga. 1982)).  Lastly, "[t]he FDCPA is a strict liability statute."  *Irwin v. Mascott* 112 F. Supp.2d 937, 963 (N.D. Cal. 2000).  A plaintiff need not prove either that the defendant knew that their debt collection practices were illegal or that they intended to violate the law.  *Id.*

Using the aforementioned principles, a court must ask whether the actions of the debt collector were harassing to the least sophisticated debtor.  *See Jeter*, 760 F. 2d at 1168; *Graziano v. Harrison*, 950 F.2d 107 (3d Cir. 1991) (noting that statutory notice under FDCPA is to be interpreted from perspective of "least sophisticated debtor" standard);  *Gammon v. GC Services Ltd. Partnership*, 27 F.3d 1254 (7th Cir. 1994) (using the "unsophisticated consumer," rather than the "least sophisticated consumer," in order to protect consumers who are uninformed, naive or trusting, while admitting objective element of reasonableness).  In the instant case, applying the FDCPA in the liberal manner, Defendant's conduct, viewed in a light most favorable to Plaintiff

and under the least sophisticated debtor standard, violated the FDCPA.

IV.   **A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER DEFENDANT'S ACTIONS WERE IN VIOLATION OF §1692d AND §1692d(5) OF THE FDCPA**

Defendant is not entitled to summary judgment as a matter of law, as Plaintiff's Statement of Material Facts and supporting case law demonstrate that a genuine issue of material fact exists as to whether Defendant's actions violated §1692d and d(5) of the FDCPA. Defendant also fails to acknowledge that Plaintiff's claims under §§ 1692d and 1692d(5) are separate claims. *See Stirling v. Genpact Services, LLC*, 2012 WL 952310 at *3 (C.D. Cal. 2012) ("a claimant may ordinarily pursue claims under both § 1692d and § 1692d(5)"); *Penny v. Williams & Fudge*, 2012 WL 43628 (M.D. Fla. 2012) (upholding a jury verdict which found that collector violated section 1692d but not section 1692d(5) of the FDCPA). Significantly, and contrary to Defendant's implication in its brief, the intent to harass is not required for a claim under § 1692d. 15 U.S.C. § 1692d. In fact, Defendant makes no separate argument as to Plaintiff's claim under § 1692d, instead simply conflating this section with § 1692d(5). For this reason alone, Defendant's motion for summary judgment on this claim should be denied. In addition, Plaintiff has presented more-than-sufficient evidence to create genuine disputes of fact on this claim, thereby precluding summary judgment.

A.   **Repeated and Continuous Collection Calls Rank Number One in All Complaints Filed with the Federal Trade Commission.**

Pursuant to § 1692m of the FDCPA, the Federal Trade Commission ("FTC") is required to submit an annual report to Congress regarding the administration of its functions, including recommendations, and report on industry compliance. 15 U.S.C. § 1692m; FTC, FTC Annual Report 2011: FDCPA, U.S. FTC ("FTC Report.") at n. 1, available at http://www.ftc.gov/os/2011/03/110321fairdebtcollectreport.pdf. According to the FTC Report,

the "FTC receives more complaints about the debt collection industry than any other specific industry." Id. at 4 (emphasis added). In 2010, the FTC received 140,036 complaints alone. *Id*. at 20. Despite this shocking number, the FTC reports that this total number of consumer complaints "may understate the extent to which the practices of debt collectors violate the law," because many consumers do not report debt collectors' unlawful acts. *Id*. at 3.

> **B.   Case law throughout the nation makes clear that whether Defendant violated sections 1692d and 1692d(5) is a question of fact for the jury.**

Defendant contends that despite placing between fifty and one hundred calls in 2011, up to twenty calls in 2012, and placing more than eighteen calls after Plaintiff requested defendant to cease calling, this conduct do not rise to the level of being continuous, repeated, and harassing as a matter of law. However, the Eleventh Circuit Court of Appeals in *Meadows v. Franklin Collection Service,* No. 10-13474, 2011 WL 479997 at *3 (11th Cir. Feb. 11, 2011)[1] concluded that the reasonableness of calls was **a question of fact for the jury**. Furthermore, a majority of courts throughout the nation concur that whether the nature and frequency of debt collection calls is unreasonable, or constitutes harassment (*i.e.*, repeated or continuous calls under § 1692d), is a factual issue for the jury. *See*, e.g., *Kavalin v. Global Credit & Collection Corp.*, WL 1260210 at *4-5 (W.D.N.Y. Mar. 31, 2011) (harassment issue of fact for the jury); *Pratt v. CMRE Financial Services*, 4:10-cv-02332-CEJ (E.D. Mo. Mar. 30, 2011) (same); *Rucker v. Nationwide Credit, Inc.,* 2011 WL 25300 (E.D. Cal. 2011) (same); *Bassett v. I.C. System, Inc,* 715 F. Supp.2d 803 (N.D. Ill. 2010) (same).

In this case, there is ample evidence of Defendant's excessive and harassing phone calls. Plaintiff testified under oath and it is undisputed that Defendant called Plaintiff between fifty and one hundred times in 2011, and not more than twenty times in 2012. PSOMF ¶ 1, DSOMF ¶ 1.

---

[1] While the *Meadows* opinion was not published, per Fed. R. App. P. 32.1 and 11th Cir. R. 36-2, Plaintiff may properly rely upon and cite the decision to this Court as persuasive authority.

Plaintiff also testified that he spoke to Defendant's representatives on ten occasions and requested that Defendant cease calling, yet Defendant continued to place more than eighteen harassing phone calls to Plaintiff.  (PSOF ¶ 36, 37).  Finally, Plaintiff testified that Defendant's harassing calls caused an aggravation of his high blood pressure.  (PSOF ¶ 37).

As courts across the nation have consistently held, this evidence is sufficient to create a fact issue for the jury as to the harassing nature of Defendant's calls.  *See*, e.g., *Valentine v. Brock & Scott, PLLC*, 2010 U.S. Dist. Lexis 40532 *11 (D. S.C. 2010) (eleven calls over a period of nineteen days, with two calls occurring on the same day, sufficient to state a claim); *Bingham v. Collection Bureau, Inc.,* 505 F. Supp. 864, 873 (D. N.D. 1981) (a single subsequent call could constitute harassment under § 1692d(5) regardless of the content of the call); *Akalwadi v. Risk Mgmt. Alternatives, Inc.,* 336 F. Supp.2d 492, 506 (D. Md. 2004) (periods of daily calls, three calls within five hours created question of fact).  Moreover, numerous courts have held that a debtor's placement of calls after a verbal request to stop may constitute harassment under the FDCPA.  *See Pratt v. CMRE*, 2012 WL 86957 at *3 (E.D. Mi. Jan. 11, 2012) (citing *Moore v. Firstsource Advantage, LLC, 2011 WL 4345703, at *14* (S.D.N.Y. Sept. 15, 2011) and *Kerwin v. Remittance Assistance Corp*., 559 F.Supp.2d 1117, 1124 (D.Nev.2008)) (debt collector's continued calls following a verbal demand to cease may violate § 1692d).

Defendant also inaccurately argues the Plaintiff did not suffer harassment because he did not answer many of Defendant's calls.  In its Statement of Material Facts, Defendant states that Plaintiff "ignored" all calls from Defendant after July 2011.  DSOMF ¶ 8.  This is a blatantly false characterization of Plaintiff's sworn testimony.  Plaintiff testified that he did not answer any of Defendant's phone calls after July of 2011, and did not testify that he "ignored" the calls.  PSOMF ¶ 8.  Moreover, the plain language of the FDCPA makes it clear that a consumer need

not even answer the phone in order for harassment to occur.  The plain language of  sections 1692d and d(5), and a liberal construction of the same, shows that the Congress contemplated instances where a consumer did not answer the phone ("causing a telephone to ring') **and** instances where the person answered ("engaging any person in telephone conversation").

Section 1692d states in pertinent part:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (5) Causing a telephone to ring **or** engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at that number called.

15 U.S.C. §§1692d and 1692d(5).

As such, all of the calls detailed *supra*, including those that Plaintiff did not answer, may be assessed to determine whether Plaintiff was harassed, a point made clear by the Eleventh Circuit Court of Appeals in *Meadows v. Franklin*.  In *Meadows*, the court found that the same type of conduct as occurring herein, including instances where a plaintiff did not answer the debt collector's calls, could constitute harassment:

> **We reject Franklin's contention that its telephone calls were not harassing because Meadows did not answer them.** The plain language of § 1692d prohibits "causing a telephone to ring ... with intent to annoy, abuse or harass any person at the called number." (Emphasis added). The statute itself recognizes that answering the phone is not necessary for there to be harassment. This makes good sense because a ringing telephone, even if screened and unanswered, can be harassing, especially if it rings on a consistent basis over a prolonged period of time and concerns debts that one does not owe.

*Meadows v. Franklin Collection Service,* No. 10-13474, 2011 WL 479997 at *3 (11th Cir. Feb. 11, 2011) (emphasis added).  According to *Meadows*, "answering the phone is not necessary for there to be harassment."  *Meadows*, 2011 WL 479997 at *3.  The *Meadows* court concluded, "a

reasonable juror could find that Franklin's telephone calls were harassing even though Meadows did not answer many of the calls." *Id.* Accordingly, the FDCPA contemplates that the act of causing someone's phone to ring repeatedly, in and of itself, can be harassing. Contrary to Defendant's assertion, Plaintiff did not need to answer Defendant's calls in order for harassment to occur.

Lastly, Defendant erroneously argues that it did not violate §§1692d or d(5) because Defendant's conduct did not exhibit the so-called "vexing qualities" Defendant argues is necessary to constitute harassment under the FDCPA. Defendant's Motion for Summary Judgment (hereinafter "MSJ") at 5. Although Defendant suggests that it did not have the requisite intent to annoy or harass, it is basic, black-letter law across the nation that intent can be proven circumstantially. As the United States Supreme Court has recognized, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Rogers v. Missouri Pacific R. Co.,* 352 U.S. 500, 508, n. 17 (1957); *see also*, *e.g.*, *Desert Palace, Inc. v. Costa,* 123 S.Ct. 2148, 539 U.S. 90 (S.Ct. 2003); *Rose v. Clark*, 478 U.S. 570, 581 (1986) (same).

Defendant incorrectly argues that there is no evidence suggesting that Defendant was calling Plaintiff with culpable intent. Since no defendant would ever admit that it intended to place telephone calls with the requisite intent, plaintiffs must rely on circumstantial evidence to establish that a defendant placed calls with the intent to annoy, harass and abuse. Numerous courts throughout the nation thus recognize that intent to annoy, abuse, or harass plaintiffs may be inferred from the nature, pattern, and frequency of debt collection calls. *See*, *e.g.*, *Dudis v. Mary Jane M. Elliot*, *P.C.,* 2012 WL 3150821 at *3 (E.D. Mich. August 2, 2012) (intent may be inferred from the substance of calls received from the debt collector); *Young v. Asset Acceptance,*

*LLC,* 2011 WL 1766058 (N.D. Tex.  2011) (intent to harass, annoy, or abuse may be inferred from the frequency, pattern, or substance of debt collector's phone calls); *Swearingen v. Portfolio*, 2012 WL 4354748 at *3, ("[w]hether a debt collector's telephone calls were made with an "intent to annoy, abuse, or harass" may be inferred from circumstantial evidence")(citing *Chavious v. CBE Group,* 2012 WL 113509 at *2 (E.D.N.Y. Jan. 12, 2012) and *Pratt,* 2012 WL 86957 at *3).   In addition, intent to harass "may be inferred by evidence that the debt collector continued to call after being asked not to call." *Pratt*, 2012 WL 86957 at *3 (citing *Moore*, 2011 WL 4345703, at *14 and *Kerwin*, 559 F.Supp.2d  at 1124).

In the present matter, Plaintiff presented sufficient evidence establishing that Defendant acted with the intent to annoy, harass and abuse. Plaintiff testified that he spoke to Defendant's representatives on ten occasions and requested that Defendant cease calling, yet Defendant continued to place more than eighteen harassing phone calls to Plaintiff.  (PSOF ¶36, 37). Plaintiff also testified that during a phone conversation, Defendant's representative "got very rude" and "was, like, a sergeant to me." (PSOMF ¶ 38).  Defendant's intent to harass, annoy and/or abuse Plaintiff can therefore be inferred based not only on the frequency, volume, and harassing substance of Defendant's calls, but also on Defendant's continued placement of calls despite Plaintiff's verbal request to cease.

Despite Defendant's claims to the contrary, the Eleventh Circuit, in accord with a majority of Courts across the nation, has ruled that whether a Defendant's actions violate §1696d and §1692d5 of the FDCPA is a factual issue for the jury. Since it is undisputed that Defendant placed up to one hundred and twenty calls to Plaintiff in 2011 and 2012, and Defendant placed more than eighteen calls to Plaintiff after a verbal request to cease, a reasonable jury could

conclude that Defendant's actions constituted harassment in violation of §1696d and §1692d5 of the FDCPA.

> **C.** **The phone records of Plaintiff and Defendant raise a genuine dispute regarding the volume, pattern, and timing of Defendant's calls**

In its Motion for Summary Judgment, Defendant alleges that Plaintiff "manufactured" his record of the calls Defendant placed to Plaintiff.  MSJ at 7.  In support of this baseless assertion, Defendant simply compares Plaintiff's record to the "unchallengeable" phone records of Comcast.  MSJ at 6-7.  However, Plaintiff has testified under oath that he created and maintained his personal records of the calls Defendant placed to Plaintiff.  PSOMF at ¶ 11. Contrary to Defendant's implication, Plaintiff's testimony is sufficient to create a genuine dispute of fact as to the volume, pattern, and timing of Defendant's calls.  Defendant overlooks the fact that Plaintiff's phone records are evidence in support of his version of events.  Importantly, in the most recent case on this issue, *Pratt*, 2012 WL 86957 at *2-3, the court held that an issue of fact as to the harassing nature of the defendant's calls was present, preventing summary judgment, where the defendant's call log showed only 17 calls but the plaintiff testified that he received an estimated 65-70 calls.  The situation here is strikingly similar to that in *Pratt*:  The Defendant's call log must be weighed against Plaintiff's testimony to determine the actual volume and pattern of calls.  Thus, as in *Pratt*, here Defendant's "uncontroverted" evidence refers simply to its own evidence, regardless of the evidence on the other side.  There are therefore genuine disputes of fact on these questions.

Defendant also points to Plaintiff's use of his records in his deposition as evidence that the records were "manufactured in an effort to create support for Plaintiff's otherwise meritless claims."  MSJ at 7.  However, Plaintiff testified at length, from memory and without consulting any written material, that he spoke with Defendant's representative in July of 2011, and recalled

the length and content of the communication "as clear as a bell." (PSOMF ¶ 7).  Furthermore,

given the extreme number of calls Plaintiff received from Defendant, it would be an impossible

burden for Plaintiff to remember the dates and times of every call. As the court stated in *Pratt*,

"The plaintiff's inability to recall the dates and times of specific phone calls does not preclude a

finding of liability . . . but may be relevant to plaintiff's credibility, a factor which the Court

cannot consider at the summary judgment stage.   *Pratt*, 2012 WL 86957 at *4; *see also*

*Swearingen*, 2012 WL 4354748 at fn 8 ("the Court does not assess the credibility of witnesses or

weigh evidence on a motion for summary judgment") (citing *Abdullahi v. City of Madison*, 423

F.3d 763, 773 (7th Cir. 2005).

      Based on the foregoing, a genuine dispute of fact exists as to the volume, pattern, and

timing of Defendant's calls.  As all three of these factors weigh heavily on whether Defendant's

conduct had the natural consequence of being annoying, abusive or harassing, Plaintiff's

evidence is sufficient to create a genuine dispute of fact precluding summary judgment in this

matter.

      **D.**    **The cases cited by Defendant do not support granting summary judgment in this case.**

      Defendant argues summary judgment should be granted as to Plaintiff's Section 1692d

and Section 1692d(5) claims based on the decisions in *Tucker v. CBE Group, Inc*., 710 F. Supp.

2d 1301 (M.D. Fla. 2010), and *Waite v. Financial Recovery Services, Inc.*, 2010 WL 5209350.

As explained below, these cases are not on point and readily distinguishable from the case at bar.

As a result, despite Defendant's citations to distinguishable case law, summary judgment is not

appropriate in this case.

      First, Defendant's reliance on *Tucker* is flawed not only because *Tucker* is readily

distinguishable, but is also fundamentally contrary to case law around the country and contrary

to the intent of congress in enacting the FDCPA.  Indeed, the Eleventh Circuit in *Meadows* reached the opposite conclusion of the district court in *Tucker* on many fundamental points.  For example, Tucker was a non-debtor and the court said there could be no harassment because he knew the calls were for his daughter and he never told the defendant to stop calling.  *Tucker*, 710 F. Supp. 2d at 1304.  *Meadows* did not endorse *Tucker*'s flawed reasoning that a person's non-debtor status bars him or her from being harassed because they know they are not legally obligated to pay the debt.  *See Tucker*, 710 F. Supp. 2d at 1308 n.3 ("This is because the least sophisticated consumer would not have believed that he was legally obligated to pay a debt incurred by his daughter as a result of Defendant's voice messages").  *Cf. Dunham v. Portfolio Recovery Associates*, 2011 WL 6221857 (8th Cir. Dec. 15, 2011) (non-debtor has standing to bring FDCPA claim – "Simply put, a mistaken allegation is an allegation nonetheless. Thus, we read [the FDCPA] to include individuals who are mistakenly dunned by debt collectors").

The Eleventh Circuit in *Meadows*, as well as the Eighth Circuit in *Dunham*, reversed the district court for this same misplaced reasoning.  In fact, the Eleventh Circuit specifically found that Meadow's non-debtor status explained **why** she did not answer the phone, and was not bar to her being harassed by the calls.  *Meadows*, 2011 WL 479997 at *3 ("the reason Meadows did not answer the calls was because she had previously told Franklin multiple times that she did not owe the debt and the debtors did not live with her. Thus, a reasonable juror could find that Franklin's telephone calls were harassing even though Meadows did not answer many of the calls.").  Further, Plaintiff respectfully submits that *Tucker* should not be relied upon because it places burdens on consumers that were not articulated by Congress in enacting the FDCPA.  In granting summary judgment as to the plaintiff's 1692d(5) claim, the *Tucker* court pointed out that "Defendant was not notified that it could not reach Stacey Tucker at the relevant telephone

number and Plaintiff did not request that CBE cease calling." *Tucker*, 710 F. Supp. 2d at 1304. Nowhere in the FDCPA does Congress impose a burden on the recipient of repeated or continuous debt collection calls to inform the collector to stop calling or to correct the collector's errant information. Additionally, there is no affirmative defense in the FDCPA that will shield debt collectors from liability if the recipient of unwanted and excessive phone calls fails to tell the collector to stop calling.

The FDCPA was enacted in 1977 to regulate the behavior of debt collectors - not the behavior of consumers. The purpose of the Act is to "protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." *Pearce v. Rapid Check Collection, Inc.,* 738 F. Supp. 334 (D. S.D. 1990) (*citing* S.Rep. No. 95-382, at 1 (1977), U.S. Code Cong. & Admin.News 1977, pp. 1695, 1696). Its goal is "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

Moreover, despite the *Tucker* court's acknowledgment that the "number of calls made during the relevant time period does seem **somewhat high**," the court astoundingly still entered summary judgment for the defendant. *Id.* at 1305 (emphasis added).[2] In doing so, the court disregarded case law from throughout the nation, and within its own district, recognizing that whether the nature and frequency of debt collection calls constitutes harassment is a factual issue for the jury. *See Kelemen v. Professional Collection Systems*, 2011 WL 31396 (M.D. Fla. Jan. 4,

---

[2] The defendant in Tucker made up to seven (7) calls a day which the court referred to as "somewhat high." While this Court need not determine the threshold level for harassment as a matter of law, it stands to reason that calls on a daily, or almost daily basis, for a period of months would also be considered somewhat high by the Tucker standard.

2011) (denying summary judgment on 1692d(5) claim where "the record contains conflicting information as to the frequency and pattern of calls made, and therefore a genuine issue of material fact exists as to whether PCS violated this section."); *Bassett,* 2010 WL 2179175; *Prewitt*, 2007 WL 841778 (number of calls was an issue of fact for fact finder); *Clark v. Quick Collect, Inc.*, 2005 WL 1586862, *4 (D. Or. 2005) ("The Court, therefore, holds the reasonableness of Morrin's volume of calls and their pattern is a question of fact for the jury").

Furthermore, the *Tucker* court improperly applied a subjective standard to determine if the plaintiff had been harassed instead of objectively looking at the conduct of the debt collector from a consumer's perspective. *See Jeter,* 760 F.2d at 1168 ("we hold that claims under § 1692d should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression or abuse").   Looking at the instant case from Plaintiff's perspective, the barrage calls that occurred after Defendant established contact with Plaintiff and was duly informed of Plaintiff's desire for the calls to cease, creates a fact issue for the jury to determine as to whether Defendant violated Section 1692d.

Defendant's reliance on *Waite v. Financial Recovery Services, Inc.* is similarly misguided.   As with *Tucker*, the Court's decision in *Waite* was fundamentally contrary to case law around the country and contrary to the intent of Congress in enacting the FDCPA.   As with the *Tucker* court, the *Waite* court also admitted that the number of calls to Plaintiff appeared "somewhat high," yet disregarded case law from throughout the nation, and within its own district, recognizing that whether the nature and frequency of debt collection calls constitutes harassment is a factual issue for the jury.   *See* discussion *infra*.   Lastly, *Waite* can be distinguished factually from the present case.   In *Waite*, the Plaintiff did not allege that Defendant continued to call after a request to cease calling, and did not allege that the substance

of Defendant's phone calls were harassing.  *Waite*, 2010 WL 5209350 at *1.  In the present case, Defendant not only placed more than eighteen phone calls after Plaintiff's request to cease, but was also verbally harassing in its phone conversations with Defendant.  PSOMF ¶¶ 37, 38.  As *Waite* is not only factually distinguishable, but also contrary to the intent of the FDCPA and case law from around the nation, this Court should deny summary judgment in this matter.

**V.   A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER DEFENDANT'S ACTIONS WERE IN VIOLATION OF §1692c(a)(2) OF THE FDCPA**

A genuine issue of material fact exists as to whether Defendant violated §1692c(a)(2) of the FDCPA.  First, Defendant admits that it placed a collection call to Plaintiff after receiving written notice that Plaintiff was represented by counsel.  PSOMF ¶ 25, DSOMF ¶ 25.  Second, even if all of Defendant's subsequent calls were being placed to Plaintiff's wife, Defendant's conduct would still be in violation of the FDCPA. Lastly, Defendant has failed to produce sufficient evidence to meet its heavy burden, and is therefore not entitled judgment as a matter of law.

It is undisputed by both parties that on Sunday, August 11 at 4:00 P.M. Eastern Time, counsel for Plaintiff sent an e-mail containing a pre-litigation draft Complaint to Defendant's Legal Department, thereby providing written notice that Plaintiff was represented by counsel. PSOMF ¶ 23,  DSOMF ¶ 23.  It is also undisputed by both parties that subsequent to receiving this notification, Defendant placed a collection call to Plaintiff on Monday, August 12 at 8:24 A.M.  PSOMF ¶ 25, DSOMF ¶ 25.  Section 1692c(A)(2) specifically states that a debt collector may not contact a consumer in connection with the collection of a debt "if the debt collector knows that the consumer is represented by an attorney with respect to such debt."  15 U.S.C. 1692c(A)(2).

Defendant argues that it should not be held accountable for the "single call" made after Defendant received notice of Plaintiff's representation, claiming that doing so would enact an "unreasonable burden" on debt collectors.  As discussed *infra*, the FDCPA, is a strict liability statute.  *Picht v. Hawks*, 77 F. Supp.2d 1041, 1043 (D. MN 1999) ("The FDCPA is a remedial, strict liability statute which was intended to be applied in a liberal manner") (citing *FTC v. Raladam Co*., 316 U.S. 149, 151-52 (1942) and *Exposition Press, Inc. v. FTC*, 295 F.2d 869, 873 (2nd Cir. 1961), cert. denied, 370 U.S. 917 (1962)).  Accordingly, "[a] single violation of any provision of the Act is sufficient to establish civil liability under the FDCPA."  *Gibson v. Grupo de Ariel, LLC*, 2006 WL 42369, *1 n. 2 (N.D. Tex. Jan. 9, 2006); *see also Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2nd Cir. 1993).

Defendant also attempts to rebut Plaintiff's 1692c(a)(2) claim by asserting that all of the calls placed to Plaintiff's home phone between August 27, 2011 and October 30, 2011 were made in an attempt to contact Plaintiff's wife in connection with her personal debts.  DSOMF ¶ 29.  Plaintiff is not in a position to ascertain to whom Defendant was directing its phone calls.  PSOMF ¶ 29.  Nonetheless, the Section 1692c(d) of the FDCPA clearly states that "[f]or the purpose of this section, **the term "consumer" includes the consumer's spouse**.  15 U.S.C. 1692c(d) (emphasis added).  Therefore, even if Defendant were attempting to contact Plaintiff's wife, Defendant would still be in violation of §1692c(A)(2), as Defendant attempted to contact a consumer after receiving written notice of representation by an attorney.

Lastly, Defendant presents the illogical argument that because Plaintiff did not answer any of Defendants calls placed after July of 2011, Defendant cannot put forth a colorable claim under §1692c(a)(2).  As discussed *infra*, the ruling in *Meadows* supports the notion that a consumer need not answer the phone for an FDCPA violation to occur. *Meadows*, 2011 WL

479997 at *3. Defendant has not produced sufficient evidence so that this Court could conclude, as a matter of law, that Defendant called Plaintiff's phone number in regards to a debt for which Plaintiff was unrepresented by counsel. Defendant has merely presented an affidavit from it representative stating that the calls were not placed to Plaintiff. DSOMF ¶ 28. Defendant has not produced any written documents or records to support this claim. Plaintiff disputes Defendant's factual assertions, yet is not in a position to determine to whom Defendant was directing its calls. Defendant, therefore, has failed to meet its burden demonstrating that it is entitled to judgment as a matter of law in regards to Plaintiff's ¶1692c(a)(2) claim. Based on the foregoing, a reasonable jury could conclude that Defendant's actions violated 1692c(A)(2) of the FDCPA.

## VI.    DEFENDANT'S BONA FIDE ERROR DEFENSE FAILS.

In attempt to rebut Plaintiff's §§1692d, 1692d(5), and 1692c(a)(2) claims, Defendant asserts that it is entitled to the *bona fide* error defense. The *bona fide* error defense exists only as an exception to the strict liability imposed upon debt collectors by the FDCPA. To prevail on a *bona fide* error defense, Defendant must establish by a preponderance of the evidence that the violation was unintentional and resulted from a *bona fide* error, notwithstanding procedures reasonably adapted to avoid error. 15 U.S.C. § 1692k(c); *Drossin v. National Action Financial Services, Inc.*, 641 F.Supp.2d 1314, 1320 (S.D. Fl. 2009); *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005-1006 (9th Cir. 2008).

The existence of reasonably-adapted procedures is "a fact-intensive inquiry" which requires relatively "elaborate" descriptions of the procedures in place. *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 421 (8th Cir. 2008). *See also Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1031 (6th Cir. 1992) (multiple employee affidavits explaining the error, five-page collection manual

explaining the procedures at issue); *Campbell v. Hall,* 624 F.Supp.2d 991, 1004 (N.D. Ill. 2009); *Bible v. Allied Interstate, Inc.,* 2001 WL 1618494 at *3 (D.Minn.2001) (multiple affidavits "explaining the lengths to which Allied goes").   Indeed, "[t]he procedures themselves must be explained, along with the manner in which they were adapted to avoid the error. Only then is the mistake entitled to be treated as one made in good faith."  *Reichert v. National Credit Systems, Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008) (internal citations omitted).   Further, whether the specific procedures Defendant did, in fact, maintain were reasonable, is a question for the jury. *See Id.; Johnson,* 443 F.3d 731-32.

In light of the FDCPA's remedial scheme, courts have taken the position of interpreting this affirmative defense narrowly. *See Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d 582, 591 (D.Md.1999) (citing *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F. 2d 22, 27 (2d Cir.1989); *Hulshizer v. Global Credit Services, Inc.*, 728 F. 2d 1037, 1038 (8th Cir.1984); *Baker v. G.C. Services Corp.*, 677 F. 2d 775, 779 (9th Cir. 1982)).   In addition to determining whether the debt collector maintained and employed procedures to avoid errors, the procedures must be reasonably adapted to avoid the ***specific error*** at issue.  *Hepsen v. J.C. Christensen and Assocs., Inc.,* 2009 WL 3064865 *6 (M.D. Fla. Sept. 22, 2009) (citing *Johnson v. Riddle,* 443 F.3d 723, 729 (10th Cir. 2006)).

In the present case, Defendant fails to provide evidence of how its policies and procedures are reasonably adapted to avoid Plaintiff's specific allegations that Defendant violated the FDCPA.  Regarding Plaintiff's §§ 1692d, and 1692d(5) claims, Defendant claims that it has a procedure in place whereby its representatives are instructed to place a seven day hold on collections calls after receiving a verbal cease and desist request.  DSOMF ¶ 26.  However, Defendant has not presented any evidence as to why their procedure failed ***in this***

*case*.  Despite speaking to Defendant's representatives on ten occasions and requesting that Defendant cease calling, Defendant continued to place more than eighteen harassing collection calls to Plaintiff.  PSOMF at ¶¶ 36, 37.  Despite the clear failure of Defendant's protocol, Defendant has presented no specific evidence as to why their procedures failed to prevent the placement of harassing phone calls to Plaintiff.

Furthermore, Defendant's alleged procedure for preventing harassment is clearly designed not to prevent harassment under §§1692d and 1692d(5) of the FDCPA, but to prevent a collector from contacting a consumer after receiving a ***written*** cease and desist demand in violation of §1692c(c).  Defendant even admits that its procedure mirrors §1692c(c) of the FDCPA.  MSJ at 9.  Plaintiff, however, has not alleged a violation of §1692c(c).  Furthermore, Defendant's alleged procedures would not have the effect of stopping harassment, as Defendant's representatives would be free to continue placing harassing phone calls seven days after receiving a verbal cease and desist request, such as the one given by Plaintiff.

Defendant's bona fide error defense also fails in regard to Plaintiff's §1692c(a)(2) claim.  Again, Defendant has failed to specify how its procedures failed in this case.  It is undisputed by both parties that on Sunday, August 11, 2011 at 4:00 P.M. Eastern Time, counsel for Plaintiff sent an e-mail containing a pre-litigation draft Complaint to Defendant's Legal Department, thereby providing written notice that Plaintiff was represented by counsel.  PSOMF ¶ 23, DSOMF ¶ 23.  It is also undisputed by both parties that subsequent to receiving this notification, Defendant placed a collection call to Plaintiff on Monday, August 12, 2011 at 8:24 A.M. PSOMF ¶ 25, PSOMF ¶ 25.  Defendant's procedures, therefore, failed in the present case.  In explaining how the failure occurred, Defendant merely stated that the call was "clearly"

unintentional, and was "inadvertently placed by unknowing employees."  As Defendant has again failed to specify **how** its procedures failed, Defendant's bona fide error defense fails.

Moreover, the Supreme Court has held that the bona fide error defense cannot apply to an error that is simply unintentional – it applies only to "procedural or clerical errors."  *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S.Ct. 1605, 1616 (2010)).  Since that decision, this Court has denied claims of a bona fide error defense where a debt collector "does not argue that it committed a procedural or clerical error.  Instead, [the debt collector] makes its argument under the pre-*Jerman* paradigm and explains that it had procedures and policies in place to avoid any such errors."  *Bassett*, 715 F.Supp.2d at 813 (citing *Ruth v. Triumph P'ships*, 577 F.3d 790, 797–98 (7th Cir.2009); *Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1114 (7th Cir.2008)).  This is precisely the case here: Defendant has simply listed its policies and procedures and, thus cannot succeed on a bona fide error defense. Therefore, disputed material facts exist as to whether Defendant developed and maintained "reasonable procedures" under § 1692k(c), and accordingly the Court should not grant Defendant summary judgment on its bona fide error defense.

## VII.   CONCLUSION

Based on the above, Plaintiff has demonstrated that genuine issues of material fact exist in the present case.  Defendant has failed to demonstrate that it did not violate §§ 1692d, 1692d(5), and 1692c(a)(2) of the FDCPA as a matter of law.  Therefore, Plaintiffs respectfully request that this Honorable Court enter an order denying Defendant's Motion for Summary Judgment and for any additional relief deemed just and appropriate.

Dated: October 10, 2012                    RESPECTFULLY SUBMITTED,

                                    By:   /s/ Shireen Hormozdi
                                          Shireen Hormozdi
                                          Krohn & Moss, Ltd
                                          10474 Santa Monica Blvd., Suite 401
                                          Los Angeles, CA 90025
                                          Phone:  (323) 988-2400 ext. 267
                                          Fax:    (866) 802-0021
                                          Attorney for Plaintiff
                                          FBN: 0882461

## <u>CERTIFICATE OF SERVICE</u>

I, Shireen Hormozdi, hereby certify that on October 10, 2012, the foregoing was filed with the

Clerk of the Court using the ECF system which electronically notifies the following:

Robert E. Sickles, P.A.
Zachary A. Harrington
Hinshaw & Culbertson, LLP
100 S. Ashley Dr., Suite 500
Tampa, FL 33602
Attorneys for Defendant

/s/ Shireen Hormozdi
Shireen Hormozdi
Krohn & Moss, Ltd
10474 Santa Monica Blvd., Suite 401
Los Angeles, CA 90025
Phone:  (323) 988-2400 ext. 267
Fax:     (866) 802-0021
Attorney for Plaintiff
FBN: 0882461
